# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Northern Division)

| | | |
|---|---|---|
| **TAMEKA PRIDGET** and her child,<br>**T.W.**, through his next friend,<br>TAMEKA PRIDGET, individually,<br>and on behalf of all others similarly situated,<br>949 Gorsuch Avenue<br>Baltimore, Maryland 21218 | *<br><br>*<br><br>*<br><br>* | **CLASS ACTION COMPLAINT<br>FOR DECLARATORY RELIEF,<br>INJUNCTIVE RELIEF** |
| **TAMITHA GRINDER CREASEY** and her child,<br>**J.G.**, through her next friend,<br>TAMITHA GRINDER CREASEY, individually,<br>and on behalf of all others similarly situated,<br>1114 North Mount Street<br>Baltimore, Maryland 21217 | *<br><br>*<br><br>*<br><br>* | |
| **ARIEL MASON** and her children,<br>**X.M., T.M.,**<br>**F.S.,** AND **B.S.,**<br>through their next friend,<br>ARIEL MASON, individually,<br>and on behalf of all others similarly situated,<br>1114 North Calvert Street<br>Baltimore, Maryland 21202 | *<br><br>*<br><br>*<br><br>*<br><br>* | CIVIL ACTION NO._____ |
| Plaintiffs, | * | |
| v. | * | |
| | * | |
| **BALTIMORE CITY BOARD**<br>**OF SCHOOL COMMISSIONERS**<br>200 E. North Avenue, Room 406<br>Baltimore, Maryland 21202 | *<br><br>* | |
| Serve Resident Agent:<br>Tammy L. Turner, Esq.<br>200 E. North Avenue, Room 208<br>Baltimore, MD 21202 | *<br><br>*<br><br>* | |

and

                                                        *

**TISHA EDWARDS**,
Interim Chief Executive Officer                          *
Baltimore City Public Schools,
in her official capacity,                                *
200 E. North Avenue, Room  405
Baltimore, MD 21202                                      *
Baltimore City
                                                        *
        Defendants.
                                                        *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## I.  INTRODUCTION

1.      Plaintiffs bring this action on behalf of themselves and all others similarly

situated, challenging the failure or refusal of the Baltimore City Board of School Commissioners

(School Board) and the Chief Executive Officer of Schools (CEO) to comply with the

McKinney-Vento Homeless Education Assistance Improvements Act of 2001, 42 U.S.C. §§

11431-11435 (2002) (McKinney-Vento or the Act).  Specifically, the School Board and CEO

(collectively, Defendants) have adopted a policy or established a custom, pattern or practice that

violates the rights of homeless children and their parents under McKinney-Vento.

2.      The named Plaintiffs are homeless children and their parents.  As a direct result of

Defendants' unlawful policy, custom, pattern or practice, two named Plaintiff children have

gone without timely and adequate transportation to their schools of origin for weeks, four

named Plaintiff children have not had access to school-mandated school uniforms, and two

named Plaintiff children are on the verge of being unable to participate in an upcoming class

trip.  As a consequence, the Plaintiff children have missed a significant amount of school

already in this academic year and the named Plaintiff parents have had to miss their own critical

2

appointments and to borrow money or deplete their extremely limited funds in order to furnish services that are squarely Defendants' responsibility to provide.  None of the Plaintiff parents has been given notice of procedures for challenging any of these denials of services by way of an administrative dispute resolution process.  All of the Plaintiffs and others similarly situated face these and other unnecessary hardships because Defendants have failed or refused, despite their obligations under federal law, to timely identify, inform, and provide educational stability to homeless students and remove barriers to their enrollment and retention.

3.     Plaintiffs seek declaratory and injunctive relief and ask this Court to enter judgment (a) declaring that Defendants are in violation of McKinney-Vento; (b) enjoining Defendants to comply with McKinney-Vento; and (c) awarding restitution to named Plaintiffs equal to the amount of money they have unnecessarily spent as a result of Defendants' failure to comply with the Act.

## II.  JURISDICTION AND VENUE

4.     This Court has jurisdiction pursuant to 28 U.S.C. § 1343(a)(3) on the ground that this action arises under the laws of the United States.

5.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) on the ground that the events or omissions giving rise to the claim occurred in Maryland.

6.     Plaintiffs have been deprived of their federal statutory rights, and bring this action pursuant to 42 U.S.C. § 1983.

7.     There is an actual controversy between the Plaintiffs and the Defendants within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201.

III.  <u>PARTIES</u>

A.  <u>Plaintiffs</u>

8.      Plaintiff TAMEKA PRIDGET is a resident of Baltimore City, Maryland.  She is homeless and has been residing at the Marian House transitional housing facility since July 2013.  She brings this action on her own behalf and as next friend of her child, T.W. .

9.      Plaintiff T.W. , age nine, is a resident of Baltimore City, Maryland, is homeless, and lives with his mother, Tameka Pridget, and his brother at the Marian House transitional housing facility.  He brings this action through his mother and next friend, Tameka Pridget.

10.     Plaintiff TAMITHA GRINDER CREASEY is a resident of Baltimore City, Maryland.  She is homeless and has been residing at Sarah's Hope shelter since January 2013.  She brings this action on her own behalf and as next friend of her child, J.G. Grinder.

11.     Plaintiff J.G., age eight, is a resident of Baltimore City, Maryland, is homeless, and lives with her mother, Tameka Pridget, at Sarah's Hope emergency shelter.  She brings this action through his mother and next friend, Tamitha Grinder Creasey.

12.     Plaintiff ARIEL MASON is a resident of Baltimore City, Maryland.  She is homeless and has been living at the Salvation Army Booth House shelter since late August 2013.  She brings this action on her own behalf and as next friend of her children, X.M. Mason, T.M. Mason, F.S. Scott, and B.S. Scott.

13.     Plaintiff X.M., age fourteen, is a resident of Baltimore City and currently resides at the Salvation Army Booth House with his mother and siblings.  He brings this action through his mother and next friend, Ariel Mason.

14.     Plaintiff T.M., age twelve, is a resident of Baltimore City, is

homeless, and currently lives with her mother and siblings at the Salvation Army Booth House.

She brings this action through her mother and next friend, Ariel Mason.

15.     Plaintiff F.S., age five, is a resident of Baltimore City, is homeless,

and currently lives with her mother and siblings at the Salvation Army Booth House.  She brings

this action through her mother and next friend, Ariel Mason.

16.     Plaintiff B.S., age four, is a resident of Baltimore City, is homeless,

and currently lives with her mother and siblings at the Salvation Army Booth House.  She brings

this action through her mother and next friend, Ariel Mason.

B.  Class Action Allegations

17.     The named Plaintiffs bring this action on behalf of two proposed Plaintiff classes

(Class A, the children class; and Class B, the parent class), pursuant to Fed. R. Civ. P. 23.  The

proposed classes are defined as follows:

> a.     Class A:  All school-aged children age four and older who, on or after
>
> September 20, 2010: (1) have resided, reside or will reside in Baltimore City,
>
> Maryland; and (2) during such period have been, are, or will be "homeless"
>
> as defined in McKinney-Vento, 42 U.S.C. § 11434a(2).
>
> b.     Class B:  All parents, guardians and adults responsible for children in
>
> Class A.

18.     Baltimore City Public Schools reported that 2,837 students were homeless

throughout or at some point during the 2012-13 school year. On information and belief, most of

the homeless children identified and served by City Schools experience basic denial of their

McKinney-Vento rights, including significant delays in providing timely and adequate transportation where required by law, and failure to ensure the provision of mandatory school uniforms and fee waivers for afterschool programs and other school activities, as needed to ensure their full participation in school.  Without complete and uninterrupted access to education, as contemplated by the Act, these children face serious setbacks in their developmental path to becoming productive, self-sufficient adults.

19.    In addition to thousands of children who would be members of Class A, there are at least as many parents of these children who would be members of Class B, provided however that some children who are members of Class A may be unaccompanied by a parent or legal guardian.  Because the members of the classes are so numerous and because many class members lack any fixed and regular residence, joinder is impracticable.

20.    There are questions of law and fact common to the classes.

21.    The claims of the named Plaintiffs are typical of the claims of the two classes.

22.    The representative Plaintiffs will fairly and adequately protect the interests of the classes.  They are ready and able to pursue this case in the interests of the classes and have no interests adverse to those of the classes they seek to represent.  They have retained counsel with sufficient expertise in class action and civil rights litigation to prosecute the case.

23.    The Defendants have acted or refused to act on grounds that are generally applicable to the classes, thereby making appropriate injunctive relief and declaratory relief with respect to the classes as a whole.

B. Defendants

24.    Defendant BALTIMORE CITY BOARD OF SCHOOL COMISSIONERS is a

6

body politic and corporate with control over all educational matters affecting Baltimore City and responsible for the general supervision and management of Baltimore City Public Schools.  As such, it is responsible for ensuring compliance with federal, state and local laws governing this system.

25.     Defendant TISHA EDWARDS is the Interim Chief Executive Office for Baltimore City Public Schools.  As such, and as the agent for the Board, she is immediately responsible for ensuring compliance with federal, state and local laws governing the Baltimore City Public School system.  She is sued in her official capacity.

26.     At all relevant times, Defendants were acting under color of state law.

IV.  STATEMENT OF CLAIM

A.  Applicable Law

27.     The McKinney-Vento Homeless Education Assistance Improvements Act of 2001, 42 U.S.C. §§ 11431-11435 (2002) (McKinney-Vento or the Act) was originally enacted in 1987 as part of the Stewart B. McKinney Homeless Assistance Act, which provided a broad range of assistance to homeless individuals and families.  Pub. L. No. 100-77, § 102(b)(2), 100 Stat. 482, 485 (codified as amended at 42 U.S.C. §§ 11301-11472).  Subtitle VI-B (McKinney-Vento) has been reauthorized and amended and relates specifically to the education of homeless children and youth.  42 U.S.C. §§ 11431-11435.

28.     The purpose of McKinney-Vento is to ensure that "each homeless youth has equal access to the same free, appropriate public education, including preschool education as provided to other children and youths."  *Id.* at § 11431(1).

29.     Under McKinney-Vento, state educational agencies such as the Maryland State

Department of Education (MSDE) receive funds from the federal government and may make subgrants to local educational agencies (LEAs) such as the School Board.

30.     All LEAs must have a broad strategy, policy, or practice for complying with McKinney-Vento.  In fact, Defendants are required to have a written policy in effect for removing barriers to homeless students' enrollment, retention, and success.  *Id.* at § 11432(g)(1)(I).

31.     Defendants must provide homeless students a school choice.  They must either allow such a student to continue his or her education in the school the student was last attending or the school he or she attended when permanently housed (the "school of origin"), or enroll the student in the local school serving the area where the student is staying while homeless (the "local school").  *Id.* at § 11432(g)(3)(A).

32.      Defendants "shall[,] to the extent feasible, keep a homeless child or youth in the school of origin, except when doing so is contrary to the wishes of the child's or youth's parent or guardian."  *Id.* at § 11432(g)(3)(B)(i).

33.     Where a homeless student seeks to enroll in a new school, Defendants must ensure "immediate[] enroll[ment] . . .  even if the child or youth is unable to produce records normally required for enrollment, such as previous academic records, medical records, proof of residency, or other documentation."  *Id.* at § 11432(g)(3)(C)(i).

34.     Homeless children and youths have the right to attend either the school of origin or the local school "for the duration of homelessness" or, in the case of a student who finds permanent housing during the school year "for the remainder of the academic year."  *Id.* at § 11432(g)(3)(A).

35.     Defendants must provide transportation to the school of origin.  *Id.* at §
11432(g)(1)(J)(ii)(I).

36.     Defendants must have a written policy and procedure for resolving disputes that
arise between individual families and school or school system administration and they must
inform homeless students and parents about their rights under that policy and procedure.  42
U.S.C. § 11432 (g)(3)(E).

37.     In the event Defendants send a homeless student "to a school other than the school
of origin or a school requested by the parent or guardian," it must provide a written explanation,
along with notice of the right to appeal.  42 U.S.C. § 11432(g)(3)(B)(ii).

38.     If there is a dispute about enrollment, the child or youth must be immediately
admitted to the school in which enrollment is sought, and provided transportation, pending
resolution of the dispute process.  *Id.* at § 11432(g)(3)(E).

39.     Defendants "shall review and revise any policies that may act as barriers to the
enrollment of homeless children," such as school uniform policies and field trip and
extracurricular fee policies that make it financially difficult or impossible for homeless children
to participate fully in classes and school activities or deny homeless children comparable access
to school programs.  *Id.* at §§ 11432 (g)(3)(C); 11432(g)(4); 11434a(1).

40.     Defendants must ensure that homeless students and parents receive notice of these
rights and are informed of the educational and related opportunities available to then.  *Id*. at §
11432(g)(6)(A)(iv)-(v).

B.  Plaintiffs Tameka Pridget's and T.W. ' Allegations

41.     Plaintiff Tameka Pridget is the mother of two minor children, K.P. Pridget, age

twelve, and T.W. , age nine.

42.     Since July 2013, she and her children have been living at the Marian House transitional housing facility in Baltimore, after having been evicted from permanent housing when Ms. Pridget lost her job.

43.     T.W. has attended James Mosher Elementary since 2011, when the family lived in permanent housing.  When the family moved to the Marian House, Ms. Pridget decided that it was in T.W.'s best interests to remain at James Mosher; he had recently begun thriving there with the implementation of new services for his special educational needs.

44.     On or about July 11, 2013, an employee of the Marian House emailed Defendants a written request for transportation on behalf of several students residing at the Marian House, following instructions provided by the school system's Homeless Education Associate.  The request included T.W., although the employee mistyped his name as "Keshon Pridget." No one from City Schools ever contacted Ms. Pridget or the Marian House to explain that the school system could not find that wrong name in its records, even though the request was submitted far in advance of the start of the school year to allow time to resolve this sort of error.

45.     On August 23, 2013, the Friday before school began, Defendants' Office of Transportation advised Ms. Pridget that T.W. was not in their system, but refused to enter him themselves and directed her to contact T.W.'s school.

46.     On August 26, the first day of school, she went to the school in person to fill out a transportation request, which she was told would take ten days to process.

47.     Since that time, Ms. Pridget and T.W. have been subject to a prolonged and continuing delay in the provision of school transportation.  She has followed up repeatedly with

the Office of Transportation and, through her attorney, with Defendants' Homeless Education

Associate.  Most recently, on September 12, she was told again that T.W.'s transportation request

would take at least another seven days to process.

48.    T.W. still does not have school-provided transportation to his school of origin.

49.    Defendants have not offered Ms. Pridget any adequate interim assistance with

getting T.W. to and from school until transportation begins.

50.    Because of Defendants' failure to fulfill their legal obligation to transport T.W.,

Ms. Pridget has been paying out of pocket and devoting hours each day to taking him to and from

school.  As a result, she has not been able to pay down debt, afford basic necessities, or save

money to move into permanent housing.  She has also been unable to participate in a work

program mandated by the Department of Social Services as a condition of her receipt of

Temporary Cash Assistance, and is currently facing the imminent termination of those benefits at

the end of September 2013.

51.    No one from City Schools ever provided Ms. Pridget with a written denial of

transportation or an explanation of her right to appeal.

C.    Plaintiffs Tamitha Grinder Creasey's and J.G. Grinder's Allegations

66.    Plaintiff Tamitha Grinder Creasey (Ms. Grinder) is the mother of one child, J.G.

Grinder, age eight.

67.    Ms. Grinder and J.G. have been homeless most of the time since 2010 following

the death of Ms. Grinder's mother, whom she and J.G. had lived with all their lives. In January

2013, Ms. Grinder and J.G. moved into Sarah's Hope shelter after being evicted from a room

they had been renting in the Brooklyn/Curtis Bay area for some months.

69.   J.G. has been attending Curtis Bay Elementary since the fall of 2012.  Ms. Grinder has chosen to keep her there because she is doing well and has several friends at the school, and because she hopes to move into permanent housing in that area in the near future.

70.   When the family first arrived at Sarah's Hope, it took seven to ten business days for Defendants to arrange transportation for J.G..

71.   Ms. Grinder was also asked to pay fees that she could not afford so that J.G. could participate in various field trips during the spring of 2013.  When she explained her homelessness again and asked for assistance with the fees, she was told they would not be waived. .Ms. Grinder paid at least two of the fees, borrowing money so she could do so, and on one occasion, could not send J.G. on the trip at all.

71.   This year, Ms. Grinder has had to ask staff at the school to enter a request for transportation on three separate occasions, beginning on the first day of school when she discovered that a member of the shelter staff had mistakenly advised City Schools that J.G. had transferred.

72.   Each time, she has been told that transportation will begin only after about ten days from each successive request.

73.   She has also spoken with staff at the Office of Transportation multiple times, to no avail.

74. Most recently, on September 19, a secretary at J.G.'s school advised Ms. Grinder that she believed the transportation request had been approved but she had no information on when services would actually begin.

75.   Defendants have not provided Ms. Grinder and J.G. with adequate assistance with

commuting to and from school for the interim period until longer-term school-provided transportation begins.

73.     As a result of Defendants' ongoing delay in the provision of transportation, Ms. Grinder has been taking J.G. to and from school each day by public transit.  J.G. has missed school twice and been late on several other occasions.

74.     Additionally, Ms. Grinder has incurred financial costs and has endured severe physical pain as a result of having to walk to and from public transit stops while suffering from chronic foot and leg soreness as a result of diabetes.

75.     She also has had to spend so many hours transporting J.G. to and from school that she has not had time to take care of the family's basic needs or visit the doctor about her own health.

76.     No one from City Schools ever provided Ms. Grinder with a written denial of transportation or an explanation of her right to appeal.

C.  Plaintiffs Ariel Mason, X.M., T.M., F.S., and B.S.

77.     Plaintiff Ariel Mason is the mother of five minor children, X.M., age fourteen, T.M., age eleven, F.S., age five, B.S., age four, and O.S., age two.

78.     Ms. Mason and her children have been staying at the Salvation Army Booth House in Baltimore City since being evicted in late August 2013.

79.     All four of Ms. Mason's school-age children attend Baltimore City Public Schools.  X.M. is in seventh grade at Baltimore Community High School, T.M. is in sixth grade at Harlem Park Middle School, and F.S. and B.S. are respectively in kindergarten and pre-kindergarten at Mary Ann Winterling Elementary School.

80.     All of the children's schools impose mandatory uniform requirements on their students.  At least some of the uniform items, such as the dress pants, shirt, and shoes required by Baltimore Community High, are more expensive than clothing items Ms. Mason would normally purchase for her children.

81.     Because Ms. Mason is homeless and has a household income of less than half of the federal poverty level, she cannot afford uniforms for her children.  Not wanting to send her children to school dressed inappropriately, she asked each of her children's schools for assistance with purchasing uniforms.

82.     Mary Ann Winterling has not provided her with any assistance with uniforms for F.S. or B.S. and has advised her to contact the District Office.

83.     Harlem Park Middle provided T.M. with only one shirt and one pair of pants during the second week of school.

84.     Baltimore Community High provided X.M. with one shirt and one belt during the second week of school.

85.     Although it did not provide X.M. with sufficient assistance with the purchase of uniforms in response to Ms. Mason's request, its staff have once removed him from school – causing him not to return for a full four days –  and another time threatened him with removal for not wearing the correct uniform items.

86.     Ms. Mason and staff at the Salvation Army Booth House have also requested uniform assistance from the District Office, starting the second week of school.  Defendants' Homeless Education Associate finally spoke with Ms. Mason on September 17 and suggested she might be able to help.  However, no assistance has yet been received.

14

87.     Because Ms. Mason has not received adequate assistance from Defendants, she has had to ask friends and family to pay for uniforms for her children. Despite this, the children do not have enough uniforms for one week of school.  As a result, they frequently go to school out of uniform or in unclean uniforms while the rest of their peers are dressed appropriately. They are anxious about getting additional uniforms because of this stigma.

88.     No one from City Schools ever provided Ms. Mason a written denial of her request for uniforms or an opportunity to appeal.

89.     The uniform requirements at Baltimore Community High, Harlem Park Middle, and Mary Ann Winterling Elementary, combined with the Defendants' failure to provide loaner uniforms or uniform vouchers, act as a barrier that keep Ms. Mason's children from participating fully in school without stigma and without the constant risk of being sent home for violation of the uniform policy.

90.     F.S. and B.S. are also facing an imminent denial of the opportunity to participate in a class trip on September 26.  The cost of the trip is $10 per child with payment due September 20.  Ms. Mason was not informed about any possibility of a fee waiver, but she asked for one at the suggestion of her attorney because she could not afford the total $20 cost.  As of September 20, the deadline for payment and a week before the trip, the school had not agreed to waive the fee and instead asked that attorney call the school to discuss the matter. It remains unclear whether the children will be allowed on the trip.

D.  Defendants' Policy, Custom, Pattern or Practice

91.     Defendants have a policy or engage in a custom, pattern or practice of systematically violating McKinney-Vento by:

a) failing to inform homeless children and youth and their parents or guardians of their rights under McKinney-Vento;

b) failing to inform homeless children and youth and their parents or guardians of supports and services available as required by McKinney-Vento;

c) failing to adequately train school personnel to understand the specific needs and educational rights of homeless children and youth;

d) failing to adequately train school personnel to comply with the educational rights of homeless children and youth;

e) failing to promptly provide homeless children with timely and adequate transportation to and from their schools of origin;

f) failing to provide a written denial of requested services or supports and inform homeless children and youth and their parents or guardians of the availability of a dispute resolution process concerning such denial;

g) failing to provide educational services to homeless children and youth that are comparable to those provided to housed children;

h) failing to coordinate with local social services agencies and State and local housing agencies to provide required services to homeless children and youth and their parents or guardians and to minimize educational disruption for homeless children and youth; and

i) failing to review and revise their policies to remove barriers to the enrollment, retention and success in school of homeless children and youth.

92.    As a direct and proximate result of Defendants' policy, custom, pattern or practice of  violating McKinney-Vento, Baltimore City's homeless students routinely are denied

many of their rights under McKinney-Vento resulting in lack of access to educational opportunities and reduced chances of success in school.

E.  Injury to Plaintiffs

93.     As set forth in the foregoing paragraphs and as a result of Defendants' policy, custom, pattern or practice, Plaintiffs have suffered and continue to suffer immediate and irreparable harm.

94.     Plaintiff T.W.  has missed and been late to school because of a lack of transportation, harms that are likely to continue if his mother, Ms. Pridget, is unable to continue to transport him herself.  Additionally, he has been advised in violation of the Act to transfer, and even though the advisor had good intentions, a change of schools would further disrupt his educational progress.

95.     Plaintiff Tameka Pridget has had to her spend limited funds and time transporting T.W. to and from school, which has prevented her from covering other costs and put her at imminent risk of losing cash benefits because of her inability to participate in a work program.

96.     Plaintiff J.G. Grinder has missed and been late to school because of a lack of transportation, harms that are likely to continue if her mother,  Ms. Grinder, is unable to continue to transport her herself, which is particularly probable given her disability and difficulty walking. She has also had to miss a class trip because of her family's inability to pay.

97.     Plaintiff Tamitha Grinder Creasey has had to spend her limited funds and time transporting J.G. to and from her school of origin, which has prevented her from attending to her family's basic needs, and exacerbated the severe chronic pain in her legs and feet because she must walk several times daily to and from public transit stops. She has also had to spend money

on J.G.'s field trips because she was denied a fee waiver even after explaining she was homeless.

98.     Plaintiffs X.M. and T.M. Mason and F.S. and B.S. Scott are attending school without the required uniforms and, as a result, they have been subject to reprimand by staff and face stigma within the school community.

99.     Plaintiffs F.S. and B.S. Scott are additionally facing an imminent denial of participation in a class trip because their school has not waived the fee.

100.    Plaintiff Ariel Mason has borrowed money and paid out of pocket for school uniforms as a result of Defendants' unlawful failure to supply them to her children.

101.    Plaintiffs' injuries are the direct and proximate result of Defendants' failure to comply with McKinney-Vento.

102.    Plaintiffs have no adequate remedy at law.

## V.  CAUSE OF ACTION

Violations of McKinney-Vento

103.    Plaintiffs repeat and incorporate by reference the allegations as set forth above.

104.    Defendants have violated the rights of the Plaintiffs and others similarly situated under McKinney-Vento, 42 U.S.C. §§ 11431 - 11435.

## VI.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

A.  Grant a temporary retraining order, preliminary injunction, and permanent injunction requiring Defendants to:

1)  provide timely school bus or other safe and adequate transportation to enable Plaintiffs T.W.  and J.G. to attend their schools of origin throughout the duration of their

homelessness and until the end of the school year in which they obtain permanent

housing;

2) provide Plaintiffs X.M., T.M., F.S., and B.S. with sufficient school uniforms or financial

assistance with the purchase of uniforms so that they can come to school throughout the

week dressed according to their schools' uniform codes, and prohibiting Defendants from

removing them from school or otherwise penalizing them until such uniforms or financial

assistance is provided;

3) allow Plaintiffs F.S. and B.S. to participate in their class field trip on September 26

without the need to pay a participation fee;

B.   Certify this case as a class action under Fed. R. Civ. P. 23(b)(2);

C.   Declare that Defendants' policy, custom, pattern or practice as described herein violates

the McKinney-Vento Homeless Education Assistance Improvements Act of 2001, 42 U.S.C. §§

11431-11435 (2002);

D.   Preliminarily and permanently enjoin Defendants from keeping in effect, maintaining,

or encouraging the policy, custom, pattern or practice declared to be violative of the Act;

E.   Award named Plaintiffs restitution for their expenses  incurred as the direct and

proximate result of Defendants' violations of the Act;

F.   Award Plaintiffs their costs and reasonable attorneys' fees; and

G.   Award such other and further relief as the Court may deem appropriate.

Respectfully submitted,

_____/s/_____

Debra Gardner (Federal Bar No. 24239)
PUBLIC JUSTICE CENTER
1 North Charles Street, Suite 200
Baltimore, MD 21201
(410) 625-9409
(410) 625-9423 facsimile
gardnerd@publicjustice.org

*Attorney for Plaintiffs*

Dated: September 20, 2013